UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RANKO CUCUZ,

    Plaintiff,

vs.

Case No.   2:15-cv-10479

Honorable Denise Page Hood

ROSTA INTERNATIONAL LIMITED,

    Defendant.
_____/

# ORDER GRANTING DEFENDANT ROSTA INTERNATIONAL LIMITED'S MOTION TO SET ASIDE DEFAULT [Dkt. No. 29]

## I.    INTRODUCTION

On August 8, 2016, the Court entered Default Judgment against Defendant Rosta International Limited ("Defendant"). On February 23, 2017, Defendant filed a Motion to Set Aside Default Judgment (the "Motion"). Dkt. No. 29. The Motion has been fully briefed. On April 19, 2017, the Court held a hearing on the Motion. For the reasons that follow, the Court grants the Motion.

## II.    BACKGROUND

The Motion turns on the residence of Defendant for purposes of service. In short, Plaintiff has asserted (and continues to assert) that Defendant is a resident of

1

China, but Defendant maintains that it is a resident of Taiwan and the Cayman Islands (and not China).

On March 25, 2005, Defendant and Plaintiff executed an agreement ("Agreement") under which, in exchange for $250,000, Plaintiff would become a shareholder and Vice Chairman on Defendant's Board of Directors. (Doc. No. 32, Ex. H, ¶3; Ex. A). Defendant also agreed to pay Plaintiff $50,000 a year and reimburse any business-related expenses up to $2,000/month. The Agreement further provided that "any and all disputes or controversies, whether of law or fact or any nature whatsoever .. . . arising from or related to your services to Defendant or the termination of such services, shall be resolved by final and binding arbitration" to be held in Southfield, Michigan in Oakland County. (Doc. 32, Ex. H at ¶10; Ex. A). The Agreement was signed by Defendant's then-Chairman and Chief Executive Officer, Jerry Huang. (Doc. 34, Ex. A).

Plaintiff paid the $250,000, accepted the Vice Chairman position, and provided services to Defendant. (Doc. No. 32, Ex. H at ¶5). In August 2005, Defendant provided Plaintiff with a Share of Stock Remittance Receipt (a temporary receipt) which confirmed that Defendant had received $250,000 from him for Defendant stock shares. Defendant informed Plaintiff that he would be provided with a stock certificate as soon as it updated its "official documentation" (Doc. No. 32, Ex. H at ¶4;

Ex. B). Plaintiff attended an initial Board of Directors meeting in Taiwan, which he believes was before the Defendant facilities were completed in the Jiangsu Province in China. Subsequently, he attended Board meetings and performed services for Defendant at the Jiangsu Province facility in China. For those Board meetings that Plaintiff did not attend in person, he telephoned China to participate by phone. Mr. Huang, the Chairman and CEO of Defendant, worked and lived in China, and Plaintiff met with him in China (Doc. No. 32, Ex. H at ¶7). Yuan Feng Industrial was an established aluminum wheel manufacturer in Taiwan, and Plaintiff understood that Yuan Feng and Crimson Investment in California would be the primary investors in Defendant. However, the intent was to establish Defendant as an independent company with an independent Board of Directors, and it was not to be a subsidiary of any other Company. The strategy was for Defendant to operate in China and become a global automotive supplier by manufacturing and supplying wheels from China (Doc. No. 32, Ex. H at ¶6).

Plaintiff argues that Defendant's principal place of business was clearly in China. Plaintiff states that Defendant manufactured its product in China, its customers visited it in China, and its CEO, Chairman and other managers worked and resided in China (Doc. No. 32, Ex. H at ¶8). Plaintiff notes that the fact that Defendant would be engaging in business in China was referenced in Plaintiff's initial Agreement as

follows: "You will have the option, but not the obligation, to invest another $250,000 at the same price and terms in 2006 when Defendant seeks additional capital to complete the expansion of its second China facility." (Doc. No. 32, Ex. H at ¶9; Ex. A).

On or about June 25, 2007, Mr. Huang as "President" of Defendant terminated Plaintiff's consulting services due to cost cutting measures but indicated that they still valued his "participation on the board as the Vice Chairman of the Board of Directors." (Doc. No. 32, Ex. H at ¶11; Ex. C). Defendant never provided Plaintiff with the stock certificate, a shareholder package or comparable and satisfactory evidence of his ownership interest, or any other financial information despite his repeated requests (Doc. No. 32, Ex. H at ¶12). Defendant further failed to provide Plaintiff with the compensation ($50,000/year) that he earned, and the company failed to reimburse him for the business-related expenses that he incurred (Doc. No. 32, Ex. H at ¶13). As a result, on June 12, 2012, Plaintiff commenced arbitration proceedings against Defendant in accordance with the arbitration provision in the Agreement. (Ex. D). The Demand for Arbitration indicated that Defendant was located in the Jiangsu Province in China. (Doc. No. 32, Ex. H at ¶14; Ex. D).

Defendant retained attorney Peter Kirsanow from the law firm of Benesch, Friedlander, Coplan & Aronoff LLP in Cleveland, Ohio to represent it. Mr.

Kirsanow's letter of June 29, 2012 indicated that all communications in the case should be directed to him. (Doc. No. 32, Ex. H at ¶15; Ex. E). In the arbitration, Defendant submitted a simple "denial" of the claims, but never specifically indicated or disputed that it was located in China. (Doc. No. 32, Ex. H at ¶16; Ex. F).

In August 2013, Defendant and Plaintiff entered into a "Negotiated Settlement Agreement and General Release" ("Settlement Agreement"), which provided that Defendant would pay Plaintiff for certain consulting fees he had earned and provide him with copies of the annual shareholder package, financial statements and other material information provided to Crimson for fiscal year 2006 through the present and stock certificates or other comparable and satisfactory evidence of his ownership interest and investment in Defendant (Doc. No. 32, Ex. H at ¶17). Plaintiff maintains that the fact that Defendant was in China was "confirmed" by the fact that the Agreement provided that the payment due date was dependent on the publically recognized holidays of the Peoples Republic of China. The Settlement Agreement expressly provided that it would be governed by the laws of the State of Michigan and that "the parties will submit to the jurisdiction of the state and/or federal courts located within the State of Michigan for the resolution of any dispute which may arise thereunder." Mr. Kirsanow was identified as counsel for Defendant in the Settlement Agreement. The Settlement Agreement expressly provided that it would not be

5

interpreted as releasing, waiving, compromising or restricting in any way any claims or rights that Plaintiff might have arising out of his investment in Defendant or his shareholder status (Doc. No. 32, Ex. I at ¶6).

Defendant paid the consulting fees but failed to comply with the other terms of the Settlement Agreement, including providing Plaintiff with copies of the annual shareholder package, financial statements and other material information provided to Crimson for fiscal year 2006 through the present. Defendant also failed to provide Plaintiff with stock certificates or other comparable and satisfactory evidence of his ownership interest and investment in Defendant for which he had paid $250,000 (Doc. No. 32, Ex. H at ¶18). During 2013 and 2014, Plaintiff's counsel contacted Mr. Kirsanow on numerous occasions to attempt to obtain compliance with the settlement agreement. The most recent response was that Mr. Huang had the documents and Defendant was investigating. (Doc. No. 32, Ex. I at ¶8; Ex. G, p. 2).

Plaintiff authorized legal counsel to commence this lawsuit on his behalf and serve it on Defendant in China (Doc. No. 32, Ex. H at ¶19). Count I of this lawsuit was for Breach of the Settlement Agreement for failing to provide the required information and Count II was for Fraud. Plaintiff's counsel emailed the Summons and Complaint to Mr. Kirsanow on February 11, 2015 and requested that he accept service on behalf of Defendant. (Doc. No. 32, Ex. I at ¶9; Ex. G, p. 2). On February 13, 2015,

Mr. Kirsanow informed Mr. Kotzian by telephone that he had contacted his client, that Mr. Huang had taken the documents, and that he would waive service of process once he had authority (Doc. No. 32, Ex. I at ¶10). On February 17, 2015, Mr. Kirsanow informed Mr. Kotzian by telephone that he could not accept service, and that Defendant was going in a "different direction" regarding representation (Doc. No. 32, Ex. I at ¶11).

Plaintiff states that he complied with all the necessary procedures for serving Defendant in China. The Chinese Ministry acknowledged receipt of the documents and translations and confirmed that the Chinese Ministry was satisfied with the translation. (Doc. No. 32, Ex. J at ¶9 and Ex. 1 to Ex. J (at 3)). However, no certificate of service of any kind was received, even though Plaintiff asserts that he made every reasonable effort to obtain it through the Chinese Ministry (Doc. No. 32, Ex. J at ¶11).

On March 29, 2016, Plaintiff moved for a Clerk's Entry of Default as to Defendant, and a Clerk's Entry of Default was entered on April 28, 2016. On June 29, 2016, Plaintiff filed a Motion for Default Judgment against Defendant and, after a hearing, the Court entered an Order for Default Judgment on August 8, 2016. On February 23, 2017, Defendant filed its Motion to Set Aside Default Judgment.

### III. ANALYSIS

#### A. Legal Standard

Pursuant to Federal Rules of Civil Procedure 55(c) and 60(b), an entry of default and a default judgment may be set aside only upon the showing of: (1) mistake, inadvertence, or excusable neglect; (2) newly discovered evidence; (3) fraud, misrepresentation or other misconduct of the adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; or (6) any other reason justifying relief from judgment. *See also Burrell v. Henderson*, 434 F.3d 826 (6th Cir. 2006); *United Coin Meter Co. v. Seaboard Coastline R.R.*, 705 F.2d 839 (6th Cir. 1983). As set forth in *United Coin*, the Court also must determine that good cause exists for setting aside default judgment by assessing whether: (a) the plaintiff will be prejudiced; (c) the defendant has a meritorious defense; and (c) culpable conduct of the defendant led to the default. *Id.* at 845; *Shepard Claims Serv., Inc. v. William Darrah & Assocs.*, 796 F.2d 190, 194 (6th Cir. 1986). The foregoing standards are applied more stringently under Rule 60(b) than Rule 55(c). *Shepard*, 796 F.2d at 194.

As the entry of default is a harsh sanction, "[a]ny doubt should be resolved in favor of the petition to set aside the judgment so that cases may be decided on their merits. *United Coin*, 705 F.2d at 846; *Shepard*, 796 F.2d 193 (there is a strong preference for deciding cases on the merit rather than by default).

**B.     Analysis**

Defendant contends that the default judgment entered against it is void and must

8

be set aside pursuant to Rule 60(b)(4) because the attempted service of process was improper and ineffective. Defendant represents that it is not a resident of China, as it is incorporated in the Cayman Islands and has a principal place of business in Taiwan. It is undisputed that Plaintiff did not attempt, nor did Defendant receive, any service of process in either the Cayman Islands or Taiwan. Plaintiff instead argues that Defendant was properly served in China. Defendant responds that it never received any service of process in China (which Defendant contends would have been improper anyway).

"[W]ithout proper service of process, consent, waiver, or forfeiture, a court may not exercise personal jurisdiction over a named defendant." *Wells v. Rhodes*, 592 F. App'x 373, 377 (6th Cir. 2014) (quoting *King v. Taylor*, 694 F.3d 650, 655 (6th Cir. 2012)). As recently stated by another judge in Eastern District of Michigan:

> When evaluating either a motion to set aside a proper entry of default or a default judgment, the court considers three factors: 1) whether the default was the result of the defendant's willful or culpable conduct; 2) whether the plaintiff would be prejudiced if the default is set aside; and 3) whether the defendant asserts any meritorious defenses to the claims. *United Coin Meter Co., Inc. v. Seaboard Coastline R.R.*, 705 F.2d 839, 844-45 (6th Cir. 1989).
>
> "However, these three factors only require consideration when service of process is properly effected because without proper service the court has no jurisdiction to take any action over the defendant, including entering a default." *Adams v. Wilmington Finance/AIG*, 2012 U.S. Dist. LEXIS 98525, 2012 WL 2905918 at * 1 (E.D. Mich. 2012). "In other words, until a party has been properly served, the Court cannot take

9

action against that party, including entering a default or judgment by default against that party." *Harper v. ACS-INC.*, 2010 U.S. Dist. LEXIS 114760, 2010 WL 4366501 at * 3 (E.D. Mich. 2010). Accordingly, "if service of process was not proper, the court must set aside an entry of default." *O.J. Dist., Inc. v. Hornell Brewing Co., Inc.*, 340 F.3d 345, 353 (6th Cir. 2003).

*Green v. City of Southfield*, No. 15-13479, 2016 U.S. Dist. LEXIS 208936, at **5-6 (E.D. Mich. Feb. 22, 2016) (Cox, J.).

In *United States v. Plesco*, No. 97-74042, 2012 U.S. Dist. LEXIS 71005, at *2 (E.D. Mich. May 22, 2012), the court adopted a report and recommendation ("R&R") to vacate a default judgment for improper service of process, explaining that "the R&R accurately articulates the law and presents a well-reasoned, persuasive analysis of the application of governing law to the facts of this case." As stated in the R&R:

> As an initial matter, "if service was improper, the default judgment is void and must be vacated" pursuant to Fed. R. Civ. P. 60(b)(4). *United States v. Murphy*, No. 99-1436, 2007 U.S. Dist. LEXIS 78020, at *5 (E.D.N.Y. Sept. 28, 2007). Indeed,
>
>> The Sixth Circuit requires that a court set aside a default judgment if service of process was not proper. *See Jalapeno Prop. Mgmt., L.L.C. v. Dukas*, 265 F.3d 506, 515 (6th Cir. 2001) (stating that "if the underlying judgment is void, it is a per se abuse of discretion for a court to deny a movant's motion to vacate the judgment under Rule 60(b)(4)") (internal citations omitted) (emphasis in the original). Therefore, if service of process is not proper, the judgment is void, and the court must set aside Defendant's default judgment. *See United Student Aid Funds, Inc. v. Espinosa*, 130 S.Ct. 1367, 1376-77, 176 L.Ed.2d 158 (2010).

*Plesco*, 2012 U.S. Dist. LEXIS 71020, at *11-12 (collecting multiple Sixth Circuit and

United States District Court cases within the Sixth Circuit holding the same).

Fed. R. Civ. P. 4(h) provides that a corporation may be served outside of any judicial district of the United States "in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery." Fed. R. Civ. P. 4(h) allows for service in a foreign country "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents ("Hague Convention")."

Defendant's insistence that it is a Cayman Islands corporation with a principal place of business in Taiwan is supported by the affidavit of Wu, Ping Yi, the in-house attorney for Defendant's parent company (Jian Sin Industrial Co., Ltd.). Wu, Ping Yi also avers that Defendant never received service of process in Taiwan, China, or the Cayman Islands. Wu, Ping Yi further averred that, on February 17, 2015, he advised Mr. Kirsanow, Defendant's former legal counsel, that Mr. Kirsanow did not have authority to accept service of process on behalf of Defendant.

Defendant maintains that the Hague Convention, pursuant to which Plaintiff attempted to serve Defendant in China, requires that service be made where a party is domiciled. "Rule 4(h) permits, *inter alia*, a foreign corporate defendant to be served outside of the United States in accordance with the Hague Convention, provided its

country of domicile is a signatory . . ." *Honig v. Cardis Enters. Int'l N.V.*, No. 14-cv-7458, 2016 U.S. Dist. LEXIS 149201, at *13 (E.D.N.Y. Oct. 27, 2016); *Weinstein v. Cardis Enters. Int'l N.V.*, No. 16-CV-2661, 2016 U.S. Dist. LEXIS 178262, at *13 (E.D.N.Y. Dec. 22, 2016); *Products & Ventures Int'l v. Axus Stationary (Shanghai) Ltd.*, No. 16-cv-00669, 2016 U.S. Dist. LEXIS 74203, at *4 (N.D. Cal. June 7, 2016). A corporation's "domicile" is its "place of incorporation and principal place of business:"

> "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." With respect to a corporation, the place of incorporation and principal place of business are "paradig[m] . . . bases for general jurisdiction." Those affiliations have the virtue of being unique—that is, each ordinarily indicates only one place—as well as easily ascertainable. These bases afford plaintiffs recourse to at least one clear and certain forum in which a corporate defendant may be sued on any and all claims.

*Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) (emphasis added) (internal citations omitted); *see also Murtech Energy Servs., LLC v. ComEnCo Sys.*, No. 2:13-cv-12721, 2014 U.S. Dist. LEXIS 85502, at *24-26 (E.D. Mich. June 24, 2014) (holding same). Accordingly, Defendant maintains that its places of domicile are the Cayman Islands (place of incorporation) and Taiwan (principal place of business).

Plaintiff does not challenge Defendant's representation that the Cayman Islands is Defendant's place of incorporation, but Plaintiff contends that China should be

12

considered to be Defendant's principal place of business. Plaintiff argues that the Court should not be convinced by Wu, Ping Yi's conclusory affidavit, especially as Defendant acknowledges that it has Chinese facilities. Plaintiff relies on the affidavit of Plaintiff, which Plaintiff believes demonstrates that Defendant's intent "was to establish [Defendant] as an independent company with an independent Board of Directors to operate in China." (Doc. No. 32, PgID 252). Plaintiff argues that Defendant's "manufacturing facility was in China, its Board meetings were held in China, and its Chairman and CEO worked and lived in China, and its customers visited it in China. (Doc. No. 32, PgID 252-53 and Ex. H at ¶¶ 6-9). For those reasons, Plaintiff believes it properly served Defendant in China under the Hague Convention.

Defendant argues that Plaintiff's beliefs regarding Defendant's presence in China are erroneous but, even if they are true, the Supreme Court has rejected the "business activities" test for determining a corporations principal place of business in favor of the "nerve center" test – which dictates a finding that Defendant's principal place of business is in Taiwan. Defendant asserts that it does not conduct any business of its own, as it is just a subsidiary of Jian Sin Industrial Co., Ltd. – the company that controls Defendant's investments. Defendant maintains that the headquarters of Jian Sin Industrial Co., Ltd. and Defendant are located in Taiwan,

where Defendant's financial documents are produced and corporate records are maintained. Defendant asserts that all of its directors and officers reside in Taiwan and "direct, control, and coordinate the company's operations from the Taiwan Headquarters," and that it does not directly own any facilities in China (Defendant represents that the facilities are owned by other entities).

Based on the circumstances described in the preceding paragraph, Defendant argues that the "nerve center" test adopted by the Supreme Court in *Hertz Corp. v. Friend*, 559 U.S. 77 (2010), supports the conclusion that Taiwan is where Defendant has its principal place of business. As stated in *Hertz*,

> "[P]rincipal place of business" is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities. It is the place that Court of Appeals have called the corporation's "nerve center."

*Hertz*, 559 U.S. at 92-93. Under the "nerve center" test, a "corporation has only one principal place of business." *Andrews v. TD Ameritrade, Inc.*, 596 F. App'x 366, 372 (6th Cir. 2014) (citing *Hertz*, 559 U.S. at 92-95). This place is "where the corporation maintains its headquarters . . . and not simply an officer where the corporation holds its board meetings." *Bestop, Inc. v. Tuffy Sec. Prods.*, No. 13-10759, 2013 U.S. Dist. LEXIS 118720, at *8 (E.D. Mich. Aug. 21, 2013) (quoting *Hertz*, 559 U.S. at 93).

Alternatively, Plaintiff asserts that Article 15 of the Hague Convention provides that a court may enter a judgment against a defendant even if no certificate of service

or delivery has been received if the following conditions are fulfilled: (a) the pleadings were transmitted by one of methods provided by the Hague Convention;" (b) "a period of time of not less than six months" has elapsed since the date of the transmission of the documents; and (c) "no certificate of any kind has been received, even though every reasonable effort has been made to obtain it through the competent authorities." Plaintiff suggests that it described in great detail the numerous steps taken to comply with the Chinese requirements for service, so the order of default was properly entered.

Finally, Plaintiff requests that, if the Court is inclined to consider granting Defendant's motion to set aside default judgment, that the Court first allow Plaintiff an opportunity to conduct discovery and hold an evidentiary hearing on whether Defendant's principal place of business is in China.

The Court grants Defendant's Motion to Set Aside Default Judgment. Based on the affidavit of Defendant's legal counsel, Defendant is incorporated in the Cayman Islands and has its principal place of business in Taiwan. It is undisputed that service was not made (or even attempted) on Defendant in either of those two countries. The factual averments Plaintiff makes in his affidavit, even if true, are not necessarily inconsistent with what is averred by Defendant's legal counsel. But, the averments made by Plaintiff represent his viewpoint of how Defendant operates, not

necessarily the manner in which it legally functions. And, even if Plaintiff took all the steps necessary to effectuate service in China, there is no evidence that such service was made on Defendant in China.

## IV. CONCLUSION

Accordingly,

IT IS ORDERED that Defendant's Motion to Set Aside Default Judgment [Dkt. No. 29] is **GRANTED**.

IT IS FURTHER ORDERED that the Clerk of the Court shall **VACATE** the Clerk's Entry of Default [Dkt. No. 14] and the Order Granting Default Judgment [Dkt. No. 22].

IT IS FURTHER ORDERED that Plaintiff shall cause service of the summons and complaint to be made on Defendant's current counsel, Lori M. McAllister, on or before May 30, 2017.

IT IS ORDERED.

S/Denise Page Hood
						Denise Page Hood
						Chief Judge, United States District Court

Dated: May 19, 2017

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 19, 2017, by electronic and/or ordinary mail.

						S/LaShawn R. Saulsberry
						Case Manager